ANNA V. GILMORE, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 97835–97842. Promulgated July 3, 1941.

*Andrew B. Young, Esq.,* and *Richard K. Stevens, Esq.,* for the petitioners.
*Brooks Fullerton, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: William Maynard Brown; Warren Webster Trust No. 1, Warren Webster, Jr., and Provident Trust Company of Philadelphia, Trustees; Warren Webster, Jr., and Katherine K. Webster (Husband and Wife); Estate of Warren Webster, Sr., deceased, Warren Webster, Jr., and W. Logan Mac-Coy, Executors; E. Kessler Webster; Fannie S. Webster Trust, Warren Webster, Jr., and Provident Trust Company of Philadelphia, Trustees; The Estate of Florence L. Tisdale, deceased, John J. Carrol and Walter Pratt, Executors.

OPINION.

Smith: The sole question presented by these proceedings is whether the petitioners, stockholders of W. F. I., are liable to income tax for 1935 in respect of alleged gains made by them upon exchange of their shares of stock in that corporation for shares of stock of Warren Webster & Co. The two corporations were merged in 1935 under the provisions of the New Jersey statutes. The exchanges were made pursuant to the agreement of merger and consolidation and the petitioners contend that under section 112 (b) (3) of the Revenue Act of 1934 the alleged gains are not to be recognized for income tax purposes.

The pertinent provisions of the Revenue Act of 1934 are as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

\*     \*     \*     \*     \*     \*     \*

(b) Exchanges Solely in Kind.—

\*     \*     \*     \*     \*     \*     \*

(3) Stock for stock on reorganization.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\*     \*     \*     \*     \*     \*     \*

(g) Definition of Reorganization.—As used in this section and section 113—

(1) The term "reorganization" means (A) a statutory merger or consolidation, or \* \* \* (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, \* \* \*

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\*     \*     \*     \*     \*     \*     \*

(c) Distributions in Liquidation.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111 but shall be recognized only to the extent provided in section 112. \* \* \*

The respondent does not contend that there was no merger of Warren Webster & Co. and W. F. I. under the laws of New Jersey; for in his brief he states: "On December 2, 1935, the two corporations merged in accordance with the laws of New Jersey, in which state both were incorporated." He contends, however, that the sole object which the

parties had in mind in bringing about the merger was to liquidate W. F. I.; that the same objective would have been obtained by direct liquidation of W. F. I.; and that the petitioners should be taxed on the gains from the exchange of their shares in W. F. I. for stock of Warren Webster & Co., the continuing corporation, just as though there had been a direct liquidation of W. F. I.

Respondent argues that the alleged reorganization was a mere device for liquidating W. F. I. and that under the rule of *Gregory* v. *Helvering*, 293 U. S. 465, it should be disregarded for tax purposes.

It is to be noted, however, that, pursuant to the merger agreement, the charter powers of Warren Webster & Co. were materially modified. After the merger the stockholders of Warren Webster & Co. held shares of stock in a corporation with different rights and powers from those before held.

The respondent further submits that there was no reorganization of Warren Webster & Co. within the meaning of the statute; that after the merger Warren Webster & Co. had the same number of shares of stock outstanding as it had before the merger and that its assets were not increased as a result of the merger.

The taxing statute carries its own definition of a reorganization. It specifically declares that "a statutory merger or consolidation" is a reorganization. It can not be denied that there was here a statutory merger.

Prior to the merger Warren Webster & Co. and W. F. I. were separate corporations, organized under the statutes of New Jersey, with distinct corporate powers. Both were subject to income tax upon their net income. The merger of the corporations was brought about for two purposes—first, to enlarge the corporate powers of Warren Webster & Co., and, secondly, to eliminate the tax liability of W. F. I. upon its income.

Congress provided in the Revenue Act of 1934 that in the case of a merger or consolidation no gain or loss shall be recognized where securities in a corporation, a party to the reorganization, are exchanged solely for securities of the merged or consolidated corporation. The purpose of Congress was to permit the merger or consolidation of corporations to be effected in a proper case without liability for income tax on the exchange of stock or securities of the constituent corporations for those of the consolidated corporation. Congress has not said that a holding corporation may not be a party to a reorganization and we think that there is no ground for interpreting the statute as excluding them.

The contention of the respondent that W. F. I. was in effect liquidated by the merger of the two corporations seems to us to be immaterial. The practical effect in many cases of a merger or con-

solidation of corporations is a liquidation of one or all of them. Indeed, in any case of a merger or consolidation one or more of the constitutent corporations cease to exist as legal entities. This, however, does not prevent the merger or consolidation from being a reorganization within the meaning of the income tax acts. See *H. B. Leary, Sr.*, 34 B. T. A. 1206; affd. (C. C. A., 4th Cir.), 93 Fed. (2d) 826; *Jacob F. Schoellkopf, Jr.*, 35 B. T. A. 855; affd., *Helvering* v. *Schoellkopf* (C. C. A., 2d Cir.), 100 Fed. (2d) 415; *Raoul H. Fleischmann*, 40 B. T. A. 672; *Commissioner* v. *Kolb*, 100 Fed. (2d) 920; *Commissioner* v. *Whitaker* (C. C. A., 1st Cir.), 101 Fed. (2d) 640; *Commissioner* v. *Food Industries, Inc.* (C. C. A., 3d Cir.), 101 Fed. (2d) 748.

In the *Schoellkopf* case, above cited, the United States Circuit Court of Appeals for the Second Circuit said:

\* \*· \* Certainly, the liquidation of one of the companies, a party to a reorganization, does not prevent the reorganization from being within the statute: § 115 (c) ·implies as much, and the courts have so decided. *Ahles Realty Corp.* v. *Commissioner*, 2 Cir., 71 F. 2nd 150; *Helvering* v. *Winston Bros. Co.*, 8 Cir., 76 F. 2nd 381; *Gross* v. *Commissioner*, 5 Cir., 88 F. 2nd 567. We cannot therefore say that the reorganization was not real within *Gregory* v. *Helvering*, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. 596, 97 A. L. R. 1355, because one of the companies disappeared. Nor can we say that it was only a device to escape taxation, assuming that that would be relevant anyway; so far as appears, the transfer of miscellaneous assets to the New York company was not interjected for other than business reasons. It is indeed somewhat startling to conclude that the taxability of the transaction depends on such a trivial incident, but that cannot be a determining consideration. If for example the holding company had held large properties, but had wished to dissolve, we should have no reluctance in reaching the same result. There would then have been an indubitable reorganization, coupled with a liquidation; and the old owners—then shareholders of the subsidiary—would simply be holding all the assets directly instead of holding some part of them through the parent's ownership of the subsidiary's shares. Such a change was within the intent of Congress \* \* \* The underlying purpose of the exemptions in §112 is to disregard corporate manipulations which do not substantially affect the shareholders' interest in the properties. \* \* \*

In *General Motors Corporation*, 35 B. T. A. 523, 525, the Board said:

\* \* \* But where the liquidation and dissolution are essential to the reorganization because the reorganization is by way of merger in its broad sense, *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, they do not serve to justify recognition of gain under section 201 [now 115], which escapes by virtue of section 203 [now 112]. "Both can have effect, and if one does somewhat overlap the other the taxpayer should not be denied, for that reason, what one paragraph clearly grants him." *Helvering* v. *Minnesota Tea Co.*, *supra* [296 U. S. 378].

See also *North American Utilities Securities Corporation*, 36 B. T. A. 320, 325; *D. W. Douglas*, 37 B. T. A. 1122, 1128.

We do not think that the instant proceedings are controlled by the decision of *Gregory* v. *Helvering*, *supra*. The facts in that case were that Evelyn F. Gregory in 1928 was the owner of all of the shares of

stock of the United Mortgage Co. That corporation held among its assets 1,000 shares of the Monitor Securities Corporation. For the sole purpose of procuring these shares for herself in order to sell them at a profit and at the same time to diminish the amount of income tax which would result from a direct transfer by way of dividend, she sought to bring about a reorganization under the provisions of the Revenue Act of 1928. To that end she caused the Averill Corporation to be organized under the laws of Delaware on September 18, 1928. Two or three days later the United Mortgage Corporation transferred to the Averill Corporation the 1,000 shares of Monitor stock, for which all the shares of the Averill Corporation were issued to Evelyn F. Gregory. On September 24, the Averill Corporation was dissolved, and liquidated by distributing all its assets, namely, the Monitor shares, to Evelyn F. Gregory. No other business was ever transacted, or intended to be transacted, by that company. Upon these facts the United States Supreme Court held that the transaction was without the pale of the reorganization provisions of the Revenue Act of 1928. The Court said:

> When subdivision (B) [of section 112 (g) of the Revenue Act of 1928] speaks of a transfer of assets by one corporation to another, it means a transfer made "in pursuance of a plan of reorganization" (section 112 (g)) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either, as plainly is the case here. * * *

No such situation obtains in the proceedings at bar. W. F. I. had been in existence for a number of years and for a purpose germane to the conduct of the affairs of Warren Webster & Co. The object for which W. F. I. had been organized had been accomplished. It became desirable to eliminate the holding company. That elimination was effected through a statutory merger of the two corporations. We think that there was a bona fide reorganization within the meaning of the taxing act and that the petitioners are not liable to income tax in respect of the exchanges of their shares of stock in W. F. I. for shares of stock in Warren Webster & Co.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

---

TURNER, dissenting: In my opinion the Board, instead of deciding, has assumed the only issue in the instant case, namely, whether there was a merger of W. F. I. with Warren Webster & Co. within the meaning of clause (A) of section 112 (g) (1), *supra*, and has devoted its attention chiefly to the proposition that the liquidation of a corporation under section 115 (c) may at the same time constitute a reorganization or a step in a reorganization within the meaning of section 112 of the statute, a proposition so plainly stated in section 115 (c) that discus-

sion thereof or the citation of decided cases seems to me unnecessary. If it be assumed that there was a merger, there is nothing left for decision, for in that case there was a reorganization under section 112 (g) (1) (A), and the surrender by the petitioners of their W. F. I. stock for the stock of Warren Webster & Co. was an exchange within the meaning of section 112 (b) (3) and it matters not that W. F. I. was liquidated thereby. On the other hand, if there was no merger, there was, of course, no reorganization and the gain realized as provided by section 115 (c) on the liquidation of W. F. I. and determined as to amount under section 111 is in no way subject to the nonrecognition provisions of section 112 (b), but is recognized in full under section 112 (a).[1]

What then is a merger and did a merger of W. F. I. and Warren Webster & Co. occur? In *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937, one of the early reorganization cases and a basic case with respect to mergers, it was said that "A merger ordinarily is an absorption by one corporation of the properties and franchises of another whose stock it has acquired." According to Black's Law Dictionary, "A merger of corporations consists in the uniting of two or more corporations by the transfer of the property of all to one of them, which continues in existence, the others being swallowed up or merged therein." In Cyclopedic Law Dictionary, it is said that a merger is "The absorption or consolidation of two or more corporations into one corporation which is accomplished by transferring the properties of the absorbed or consolidated corporations to the one corporation which absorbed the others." In Fletcher's Cyclopedia of the Law of Private Corporations, vol. 15, p. 8, it is said: "Strictly speaking, a merger means the absorption of one corporation by another, which retains its name and corporate identity with the added capital, franchises and powers of the merged corporations. It is the uniting of two or more corporations by the transfer of property to one of them which continues in existence, the others being merged therein."

That the Legislature of New Jersey in enacting its statute with respect to mergers used the term merger in its ordinary sense, and as defined above, is indicated by the following provision quoted by the petitioners from the New Jersey statutes:

When such merger or consolidation is effected, all of the rights, privileges, powers and franchises of each of such corporations, both of a public and private nature, all real and personal property, all debts due on any account, as well for stock subscriptions as all other things in action or belonging to each of the corporations, and all and every other interest, shall vest in the

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

consolidated corporation as effectually as they were vested in the several and respective former corporations. * * * [Laws of 1896, ch. 185, secs. 106-7, p. 310.]

Essential therefore to a merger is the absorption by the continuing corporation of the properties and the franchises of the merged corporation or corporations. In this case we know that no properties of W. F. I. were absorbed by Warren Webster & Co. and it is only by inference that we may conclude that additional rights or powers were acquired.

If in the instant case we were privileged to look no further than the written instrument executed by W. F. I. and Warren Webster & Co. and, if we might further have the privilege of excluding or ignoring article X, we might readily conclude that a merger of W. F. I. into Warren Webster & Co. did occur. The instrument is designated an "Agreement of Merger and Consolidation", and the words "merged" or "merger" are recurrent throughout, and article III, except for the limitation prescribed by article X, provides that Warren Webster & Co. shall thereafter have and be vested "with all and singular the rights, privileges, powers and franchises of WEBSTER FINANCE & INVESTMENT COMPANY, and with all property, real, personal and mixed" and "all property, rights, privileges, powers and franchises, and all and every other interest of WARREN WEBSTER & COMPANY." No argument or discussion is needed, however, to establish the proposition that the calling of an agreement an agreement of merger or a transaction a merger does not make them so. The conclusion sought must be justified by what was actually done and accomplished. The record shows that Warren Webster & Co. never absorbed or acquired any of the properties of W. F. I. and article X indicates that it was never intended that it should. The only property which even momentarily passed from W. F. I. into the possession of Warren Webster & Co. consisted of the 9,003 shares of Warren Webster & Co. stock and those shares were received for the sole purpose of reissue or transfer to the stockholders of W. F. I. in liquidation and the said shares were in fact so transferred and reissued without change. What was done in so far as Warren Webster & Co. was concerned was in effect no different from the receipt by it of other or similar shares for transfer on its stock books from one purchaser to another.

It is stated in the majority opinion, however, that the charter powers of Warren Webster & Co. were materially modified and that the stockholders thereafter held shares of stock in a corporation with different rights and powers from those held before. This suggestion is made I suppose to support the conclusion that there was a merger of W. F. I. and Warren Webster & Co. in that there was an absorption by Warren

Webster & Co. of the rights, powers and franchises of W. F. I. so as to give it rights and powers which it did not have before. One difficulty with that proposition is that it is mere conjecture to say that the rights and powers of Warren Webster & Co. were substantially changed or modified in any way, even though we assume that the so-called agreement of merger when filed with the Secretary of State for New Jersey did serve to give Warren Webster & Co. powers and rights comparable to those of W. F. I. The record does not show the powers of either corporation and for all we know they may have been actually or in substance the same. Furthermore, assuming they were different, the effect was nothing more than an amendment of articles by Warren Webster & Co. and there was still no merger as indicated by the statute, an essential element thereof being the absorption by the continuing corporation of the properties and business of the merged corporation.

The petitioners and the Board rely on *H. B. Leary, Sr.*, 34 B. T. A. 1206; *Jacob F. Schoellkopf, Jr.*, 35 B. T. A. 855; affd., *Helvering v. Schoellkopf*, 100 Fed. (2d) 415; *Commissioner v. Kolb*, 110 Fed. (2d) 920; *Commissioner v. Whitaker*, 101 Fed. (2d) 640; and *Commissioner v. Food Industries, Inc.*, 101 Fed. (2d) 748, to support the conclusion reached. As I view this case, however, those decisions not only fail to support the proposition that there was a merger here, but point to a contrary conclusion. In those cases the General Baking Corporation, a Maryland corporation and a holding company, was the owner of practically all of the stock of the General Baking Co., a New York corporation, and approximately $61,000 of miscellaneous assets. It was decided to liquidate the Maryland corporation. Under an agreement between the two corporations the Maryland corporation transferred all of its properties, including the stock of the New York corporation and the $61,000 of miscellaneous assets, to the New York corporation, whereupon the New York corporation delivered to the stockholders of the Maryland corporation in liquidation of the latter common shares of the New York corporation having added voting rights. The question was whether there was a reorganization within the meaning of section 112 (i) of the Revenue Act of 1928, which in so far as is pertinent here reads as follows: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders, or both, are in control of the corporation to which the assets are transferred." In *H. B. Leary, Sr.*, the Board held, and in its holding was affirmed by the U. S. Circuit Court of Appeals for the Fourth Circuit, that while "there was no

statutory merger or consolidation" of the two corporations there was a reorganization under the parenthetical provision of clause (A) quoted above. With respect to the words in parenthesis the Supreme Court said, in *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462: "They expand the meaning of 'merger' or 'consolidation' so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words." In enacting the Revenue Act of 1934, under which the instant case must be decided, Congress eliminated the parenthetical portion of clause (A) and the scope of that provision is now limited to statutory mergers or consolidations. Accordingly the case of *H. B. Leary, Sr.*, can not be regarded as authority for the proposition that the transaction herein was a merger under clause (A) of the definition.

In *Helvering* v. *Schoellkopf* and *Commissioner* v. *Food Industries, Inc.*, the United States Circuit Court of Appeals for the second and third circuits, respectively, not only held that the transaction there dealt with was not a merger or consolidation, but held further that it did not even meet the requirements of the parenthetical provisions of clause (A). In that connection the court, in *Helvering* v. *Schoellkopf*, said that the shares of the New York corporation "could not be regarded as property acquired by the New York company, that company was under contract to return them, and did not acquire them." With further respect to the applicability of clause (A) the court concluded as follows: "To this the taxpayer answers that what was returned was not the old shares, but new ones, which were the price of the old; having a par value and a larger voting power relative to the preferred shares, they were to be regarded as something quite different from their predecessors. No doubt the question is one of degree, but we think that the two issues were so much alike as to be substantially the same. * * * We therefore regard the transfer of the shares as mere form; indeed nobody has been able to put his finger on any reason why it was necessary for any purpose. Subdivision A did not cover the transaction." It was held in both cases, however, as was true also in *Commissioner* v. *Kolb* and *Commissioner* v. *Whitaker*, that the transaction by reason of the transfer of the miscellaneous assets of the Maryland corporation to the New York corporation was a reorganization under clause (B). Clause (B) of the 1928 Act is the same as clause (C) of the 1934 Act, but there is no contention in the instant case that the transaction was a reorganization within the meaning of clause (C). Furthermore, in the instant case, according to the record, there were no assets except the 9,003 shares of Warren Webster &

Co. stock, which, in accordance with article X of the agreement, were immediately reissued without any change whatever to the stockholders of W. F. I. in liquidation. Accordingly there was not, under the cases cited, a transfer of W. F. I. of all or a part of the assets to Warren Webster & Co. so as to make the transaction a clause (C) reorganization.

That the transaction effected the liquidation of W. F. I. is, of course, admitted and, unless there was a reorganization under section 112 (g), the entire amount of the gain realized must be recognized under section 112 (a), *supra.* If my reasoning above is sound, there is not even literal compliance with the provisions of the statute dealing with reorganizations and, therefore, no occasion to consider the effect of *Gregory* v. *Helvering*, 293 U. S. 465, relied on by the respondent. The stockholders of W. F. I. came out of the transaction with exactly the same property they would have received from the liquidation of W. F. I. without the deviousness resulting from the execution of the so-called "Agreement of Merger and Consolidation," and in that connection the following statement appearing in the opinion of the court in *Commissioner* v. *Food Industries, Inc.*, is of particular interest. The court said: "Though the transactions between the two companies are literally within the provisions of section 112 (i) (1) (B), we would not feel bound to hold that the surrender of the stock held by the respondent in the Maryland company and the receipt by it of the stock and debentures of the New York company was a nontaxable exchange if the result to the respondent was that which would have come to pass had the Maryland corporation been dissolved with the consent of its stockholders in the ordinary way and without entering into any transactions or agreements with the New York company."

It it true that the substance of petitioners' stock interests remained the same as before the liquidation in that the elements giving value and substance to the stock of W. F. I. before the liquidation and to the stock of Warren Webster & Co. received by them as the result of the liquidation continued to be the properties and business of Warren Webster & Co. The same thing may be said, however, with respect to any dissolution of a holding company and the distribution of the stock or securities which it holds to its stockholders in liquidation and, unless we are willing to go so far as to say that any dissolution of a holding company which so results in the distribution to its stockholders of the stock and securities held by it is a merger and therefore a reorganization, even though there is no pretense of or attempted compliance with the reorganization provisions of the statute, it is my opinion that a conclusion contrary to that of the

majority must be reached in the instant case. That is not to say that a holding company may not effect or be a party to a reorganization within the meaning of the statute,[2] but, if so, the transaction must be a reorganization as that term is defined by the statute.

For the reasons stated I respectfully note my dissent.

HILL agrees with this dissent.

---

[2] *H. B. Leary, Sr.; Jacob Schoellkopf, Jr.; Commissioner* v. *Kolb; Commissioner* v. *Whitaker; Commissioner* v. *Food Industries, Inc.*, all *supra*, and *Chester A. Souther*, 39 B. T. A. 197.