George Palen Snow v. Commissioner. Estate of Mary Palen Snow, Deceased, George Palen Snow and Dorothy S. Nicholas, Executors v. Commissioner.
Snow v. Commissioner
Docket No. 107390, 107391.
United States Tax Court
1942 Tax Ct. Memo LEXIS 48; 1 T.C.M. (CCH) 197; T.C.M. (RIA) 42632; December 10, 1942
*48 Petitioners in 1937 exchanged stock in one corporation solely for stock in another corporation. Held, that the exchange was made in pursuance of a plan of reorganization; that both corporations were parties to the reorganization; and that under section 112 (b)(3) of the Revenue Act of 1936, the gain from the exchange should not be recognized. Anna V. Gilmore, et al., 44 B.T.A. 881, affirmed by both the Third and Fifth Circuit Courts, followed. John D. Garrison, Esq., 25 Broadway, New York City, for the petitioners. Cor way N. Kitchen, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These consolidated proceedings are for the redetermination of deficiencies in income taxes determined by the respondent for the calendar year 1937 against petitioner George Palen Snow in the amount of $9,014.83 and against the Estate of Mary Palen Snow, deceased, in the amount of $2,450.84. Petitioner George Palen Snow assigned but one error: (a) The Commissioner erred in including in petitioner's net income the sum of $34,266.30 as recognizable gain realized by petitioner upon the exchange of stock of Anthony Avenue Holding Company, Inc., for stock *49 of Realty Operating Company in 1937. The executors for the Estate of Mary Palen Snow likewise assigned but one error: (a) The Commissioner erred in including in the decedent's net income the sum of $14,800.50 as recognizable gain realized by decedent upon the exchange of stock of Anthony Avenue Holding Company, Inc. for stock of Realty Operating Company in 1937. In the respective deficiency notices the respondent made other adjustments to net income which are not contested by petitioners. Findings of Fact Petitioner George Palen Snow is an individual who filed his Federal income tax return for the calendar year 1937 with the collector of internal revenue for the third district of New York. Petitioners George Palen Snow and Dorothy S. Nicholas are the duly qualified executors of the Estate of Mary Palen Snow, deceased. A Federal income tax return for the calendar year 1937 was filed by George Palen Snow as such executor on behalf of Mary Palen Snow, deceased, with the collector of internal revenue for the third district of New York. In 1937 Realty Operating Company (sometimes hereinafter referred to as "Realty") and Anthony Avenue Holding Company, Inc. (sometimes hereinafter *50 referred to as "Anthony") were stock corporations organized and existing under the laws of the State of New York and each corporation was authorized to engage in the business of holding real estate, mortgage participations and other investments. The powers of these two corporations were not enlarged at any time material to these proceedings. During 1937 Realty had issued and outstanding 2,250 shares of common stock of $50 par value per share, all of which, except for two qualifying shares held by directors, was owned by petitioner George Palen Snow. Prior to June 21, 1937, Realty had issued and outstanding in addition to its common stock, 2,000 shares of voting preferred stock of $100 par value per share, all of which was owned by Anthony. Prior to July 20, 1937, Anthony had issued and outstanding 400 shares of common stock of $100 par value per share which constituted its sole authorized issue. Prior to June, 1937, such shares were owned of record and beneficially as follows: Name
No. of Shares
George Palen Snow
243
Mary Palen Snow
105
Dorothy Nicholas
52
400
Prior to 1936, Anthony was the owner of two garages which were operated for its account by Realty. *51 Anthony derived a substantial income from such operation. In 1936, Anthony parted with title to the garages and thereafter the only remaining assets of Anthony were the original 2,000 shares of voting preferred stock of Realty and certain marketable securities. These securities had a fair market value on July 20, 1937, of $24,758.40 and were carried on the books of Anthony at a cost of $24,500. The only liability of Anthony July 20, 1937, was a note payable in the amount of $15,300. Realty continued to manage the two garages on a brokerage basis after Anthony had disposed of them. For some time prior to 1937 and during 1937 and 1938, Realty, in addition to being in the business of real estate management, was engaged in the business of making mortgage loans. In 1937, the management of Realty contemplated continuing and expanding the mortgage loan business. In order to carry on the mortgage loan business Realty was required to have among its assets a substantial amount of cash and marketable securities. Prior to July 20, 1937, the assets of Realty consisted of cash, mortgages and mortgage participations, loans and accounts receivable, notes receivable, stocks and bonds. On June 17, *52 1937, the board of directors of Realty convened at a special meeting and adopted resolutions setting forth a plan providing for (a) the increase of the authorized voting preferred stock of Realty from $200,000 consisting of 2,000 shares of the par value of $100 each to $410,000 consisting of 4,100 shares of the par value of $100 each; (b) the exchange of 2,092 of such newly authorized shares of voting preferred stock of Realty for all of the outstanding capital stock of Anthony; and (c) the merger of Realty and Anthony pursuant to section 85 of the Stock Corporation Law of the State of New York. The minutes of this meeting in so far as they are material here are as follows: The Chairman stated that after consultation with the Company's attorneys it had been suggested that ANTHONY * * *, a New York corporation, be merged with the Company, the Company thereby acquiring all of the assets of ANTHONY* * * and assuming all of its liabilities. He stated that in order to carry out this merger the stockholders of ANTHONY * * * had offered to transfer all of the outstanding capital stock of ANTHONY * * * to the Company in exchange for two thousand and ninety-two (2,092) shares of the preferred *53 stock of the par value of One hundred Dollars ( $100) per share of the Company to be distributed among the stockholders of ANTHONY * * * pro rata in accordance with their holdings of stock in that company. He further stated that in order to carry out the foregoing, it would be necessary and advisable to increase the preferred stock of the Company from Two hundred thousand Dollars ($200,000) consisting of two thousand (2,000) shares having a par value of One hundred Dollars ( $100) each to Four08u5d9ed ten thousand Dollars ($410,000) consisting of four thousand one hundred (4,100) shares having a par value of One hundred Dollars ( $100) each. He further stated that upon effecting the merger of ANTHONY * * * and the Company, two thousand (2,000) shares of the Company's preferred stock now held by ANTHONY * * * would be retired. After full discussion and upon motion duly made, seconded and unanimously carried, it was RESOLVED that the preferred stock of the Company be increased from $200,000 consisting of 2,000 shares of the par value of $100 each to $410,000 consisting of 4,100 shares having a par value of $100 each; and * * * *
FURTHER RESOLVED that the proper officers of the *54 Company are hereby authorized to issue and deliver to the stockholders of ANTHONY * * * pro rata in accordance with and against receipt by the Company of their respective holdings of the stock of ANTHONY * * *, 2,092 shares having a par value of $100 per share of such additional preferred stock of the Company to be so authorized; and FURTHER RESOLVED that it is hereby declared advisable and for the best interests of the Company that the Company be merged with ANTHONY * * * pursuant to section 85 of the stock corporation law whereby all of the estate, property, rights, privileges and franchises of ANTHONY * * * shall vest in and be held and enjoyed by the Company as fully and entirely without change or diminution as the same were before held and enjoyed by ANTHONY * * * to be managed and controlled by REALTY * * * in its name but subject to all liabilities and obligations of the ANTHONY AVENUE HOLDING COMPANY, INC. and the rights of all creditors thereon * * *. The purpose of such plan was to effect economies and convenience in operation and management by elimination of the separate corporate entity of Anthony without distributing to the stockholders of Anthony the marketable securities *55 owned by Anthony which were of value/ to Realty in connection with the mortgage loan business carried on by it. On June 21, 1937, pursuant to such plan, the voting preferred stock of Realty was increased to 4,100 shares in the manner provided by sections 36 and 37 of the Stock Corporation Law of New York and, between June 17 and June 22, 1937, 2,092 shares of such newly authorized voting preferred stock were issued by Realty in exchange for the entire outstanding capital stock of Anthony. On July 20, 1937, a "Certificate of Merger of Anthony Avenue Holding Company Inc. by Realty Operating Company Pursuant to Section 85 of the Stock Corporation Law" was filed with the Secretary of State of the State of New York, as provided for by the resolutions adopted by the board of directors of Realty at the aforesaid special meeting held June 17, 1937. At the time of the merger the entire assets of Anthony consisted of the original 2,000 shares of voting preferred stock of Realty and marketable securities having a market value at that time of $24,758.40, and the entire liabilities of Anthony consisted of notes payable in the amount of $15,300. Upon such exchange petitioner George Palen Snow *56 surrendered to Realty 243 shares of the capital stock of Anthony which he had purchased more than ten years prior to 1937 at a cost of $12,879 and received in exchange 1,271 shares of the newly authorized voting preferred stock of Realty. Upon such exchange Mary Palen Snow, deceased, surrendered 105 shares of the capital stock of Anthony which she had acquired by gift in 1932 from George Palen Snow who had acquired the same by purchase more than ten years prior to 1937 at a cost of $5,565 and received in exchange 549 shares of the newly authorized voting preferred stock of Realty. On the dates of such exchanges and surrenders the newly authorized voting preferred stock of Realty had a fair market value of $100 per share. On and prior to the dates of the exchange and surrender of the common stock of Anthony for the preferred stock of Realty, the common stock of Anthony had a fair market value of $523 per share, computed as follows: 2,000 shares of voting pre-
ferred stock of Realty
$200,000
Other assets at cost
24,500
Total assets
$224,500
Notes Payable
15,300
Net Worth
$209,200
Value per share of 400
shares Anthony issued
and outstanding
523
The aforesaid 2,000 shares *57 of voting preferred stock of Realty were canceled and retired by Realty on July 20, 1937. On January 3, 1938, Realty filed a Certificate of Reduction of Preferred Stock with the Secretary of State of the State of New York pursuant to section 36 of the Stock Corporation Law whereby the authorized number of shares of voting preferred stock of Realty were reduced from 4,100 shares to 2,100 shares. Realty continued in business after the merger. It participated in two mortgage loans after the merger, one in 1937 and one in 1938. It also continued its real estate management activities. Realty was liquidated in 1939 and its assets were distributed to its stockholders. In the deficiency notices the respondent determined additional income taxes for 1937, as stated above, against the respective petitioners on the ground that the transaction hereinabove described gave rise to taxable capital gain on the part of petitioner George Palen Snow in the amount of $34,266.30 or the recognizable portion (30%) of the difference of $114,221 between the cost of the 243 shares of capital stock of Anthony surrendered by him ($12,879) and the market value ($127,100) of the 1,271 shares of newly authorized *58 voting preferred stock of Realty acquired by him in connection with such exchange and on the part of Mary Palen Snow, deceased, in the amount of $14,800.50 or the recognizable portion (30%) of the difference of $49,335 between the cost of the 105 shares of capital stock of Anthony surrendered by her (5,565) and the market value ($54,900) of the 549 shares of newly authorized voting preferred stock of Realty acquired by her in connection with such exchange. Any part of the stipulation of facts filed in these proceedings, including the exhibits thereto, not specifically set forth herein, is incorporated herein by reference and made a part of these findings of fact. Opinion BLACK, J.: Petitioners concede that upon the exchange of the common stock of Anthony for the preferred stock of Realty they realized a gain in the respective amounts determined by the respondent, but contend that, under section 112(b) (3) of the Revenue Act of 1936, the gain so determined should not be recognized. The material provisions of this section, together with section 85 of the Stock Corporation Law of New York are in the margin. [1] Under these sections petitioners contend that there was a statutory merger *59 of Anthony and Realty and therefore a reorganization; that both Anthony and Realty were parties to the reorganization; that there was a plan of reorganization; that in pursuance of the plan petitioners exchanged their stock in Anthony solely for stock in Realty; and that the case of is directly controlling in favor of petitioners. The respondent contends that there was no statutory merger and hence no reorganization; that even if there was a merger and the transaction in question was literally within the terms of section 112(b) (3), petitioners nevertheless should not have the benefit of that section on the ground that the transaction was a pure subterfuge designed at tax avoidance; and that what in substance occurred was a receipt by petitioners of amounts distributed in complete liquidation of Anthony, the treatment of which is provided for in section 115(c) [2] of the Revenue Act of 1936. In his brief the respondent refers to the Gilmore case and states that he does not acquiesce in the views expressed by the majority of the Tax Court in that case and that he does not concede that the decision is controlling. *60 *61 The Gilmore case has recently been affirmed both by the Third Circuit and by the Fifth Circuit. See , and . We agree with petitioners that the authorities just cited control the instant proceedings in petitioner's favor. All of the arguments advanced by the respondent in the instant proceedings were made and rejected in the Gilmore case. We do not think it would serve any useful purpose to go over the same field again in the instant proceedings. Applying the law to our findings we hold that under section 85 of the Stock Corporation Law of New York there was a statutory merger of Anthony with Realty. The merger is a reorganization under section 112(g) (1) (A); and since Realty acquired all of the properties of Anthony, both corporations were parties to the reorganization under section 112(g) (2). See also Article 112(g)-2, Regulations 94. The reorganization was planned at a special meeting of the board of directors of Realty held on June 17, 1937. In pursuance *62 of this plan petitioners exchanged their stock in Anthony solely for stock in Realty. The exchange falls squarely within the provisions of section 112(b) (3). The respondent is in error when he says the same result would have been accomplished if Anthony would have been liquidated instead of being merged with Realty. If complete liquidation of Anthony had occurred, the stockholders of Anthony (including the petitioners herein) would have received 2,000 shares of Realty, other assets of the value of $24,758.40, and they would have had to assume liabilities of $15,300. Under the plan of reorganization, Realty received all the assets and assumed all the liabilities of Anthony, and the stockholders of Anthony received 2,092 shares of Realty. There was a bona fide business purpose back of the plan involved in these proceedings and there are present no facts requiring the application of the principles announced in . The gain determined by the respondent upon the exchange by petitioners of their stock in Anthony for stock in Realty should not be recognized. Section 112(b) (3), supra; *63 Decisions will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS (a) General Rule. - Upon the sale or exchange of property the entire amount of the gain or loss determined under section 11, shall be recognized, except as hereinafter provided in this section. (b) Exchanges Solely in Kind. - * * * * *
(3) Stock for stock on reorganization. - No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * * * *
(g) Definition of Reorganization. - As used in this section and section 113 - (1) The term "reorganization" means (A) a statutory merger or consolidation, (2) The term "a party to a Reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another. Section 85 of the Stock Corporation Law of New York is entitled "Merger" and provides in part as follows: 1. Any domestic stock corporation * * * owning all the stock of any other domestic stock corporation, authorized to engage in business similar or incidental to the business which the possessor corporation is authorized to engage in. * * * may file in the office of the secretary of state a certificate of such ownership * * * setting forth a copy of the resolution of its board of directors to merge such other corporation, and to assume all of its obligations, and the date of the adoption thereof. * * * Upon the filing of such certificate, all of the estate, property, rights. privileges and franchises of such other corporation, shall vest in and be held and enjoyed by such possessor corporation as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation * * *. 2. The possessor corporation shall be deemed to have assumed all the liabilities and obligations of the merged corporation and shall be liable in the same manner as if it had itself incurred such liabilities and obligations. ↩
2. SEC. 115. DISTRIBUTIONS BY CORPORATIONS * * * * *
(c) Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112.↩